UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 03-1160
(CA-01-2672-WMN)

———————————

JUDICIAL WATCH, INCORPORATED,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE
TREASURY; INTERNAL REVENUE SERVICE

Defendants - Appellees,

and

CHARLES O. ROSSOTTI; DONNA DORSEY; M. PETER BRESLAN; WAYNE
HAMPEL; STEVEN T. MILLER

Defendants.

———————————

O R D E R

———————————

The court amends its opinion filed January 6, 2004, as

follows:

On page 2, Counsel section, line 1 -- the firm "BOPP,

COLESON & BOSTROM, Terre Haute, Indiana," is deleted and replaced

with "JUDICIAL WATCH, INC., Washington, D.C."


For the Court - By Direction


_____
Clerk

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JUDICIAL WATCH, INCORPORATED,
            *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA; UNITED
STATES DEPARTMENT OF THE
TREASURY; INTERNAL REVENUE
SERVICE,
            *Defendants-Appellees,*

and

CHARLES O. ROSSOTTI; DONNA
DORSEY; M. PETER BRESLAN; WAYNE
HAMPEL; STEVEN T. MILLER,
            *Defendants.*

No. 03-1160

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(CA-01-2672-WMN)

Argued: September 26, 2003

Decided: January 6, 2004

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Motz wrote the majority
opinion, in which Judge Niemeyer joined. Judge Luttig wrote an opin-
ion dissenting in part.

---

## COUNSEL

**ARGUED:** Dale L. Wilcox, JUDICIAL WATCH, INC., Washington, D.C., for Appellant. Gretchen M. Wolfinger, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Larry Klayman, Paul J. Orfanedes, JUDICIAL WATCH, INC., Washington, D.C., for Appellant. Eileen J. O'Connor, Assistant Attorney General, Thomas M. DiBiagio, United States Attorney, Jonathan S. Cohen, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Judicial Watch, Inc. submitted a series of requests under the Freedom of Information Act (FOIA) to the Internal Revenue Service (I.R.S.). In response, the I.R.S. released 785 of 807 pages in full and redacted portions of 125 more pages. The I.R.S. claimed the protection of various FOIA exemptions for the withheld material. Judicial Watch then initiated this action, asserting *inter alia*, that the I.R.S. had unlawfully withheld information from responsive documents, and seeking to compel release of this information. The district court granted summary judgment to the I.R.S. We affirm.

I.

Judicial Watch, a non-profit public interest law firm, describes its purpose as "uncovering government corruption and then educating the public about its findings." Judicial Watch submitted four requests under FOIA to eleven offices of the I.R.S., including the Baltimore Office, in letters dated October 14, 1998; April 14, 2000; January 13,

2001; and July 27, 2001. The requests sought all records referring or relating to Judicial Watch and/or its founder, Larry Klayman.

The I.R.S. responded to the 1998 request in 1999 by releasing in full to Judicial Watch 317 of 382 pages of responsive documents. It responded to the January 13, 2001 request later that year by releasing in full to Judicial Watch 70 of 73 pages of responsive documents. Finally, on June 11, 2002, the I.R.S. released in full to Judicial Watch an additional 498 pages of documents responsive to the 2000 and July 27, 2001 requests.

In all, the I.R.S. continues to withhold twenty-two pages of responsive documents in full and portions of 125 pages. Those documents consist of: (1) redacted "return information" of taxpayers other than Judicial Watch in the form of memoranda, document transmittals, FAX cover sheets, and reports; (2) identifying information concerning lower-level I.R.S. employees; (3) the redacted names, addresses, and postal bar codes of private individuals who wrote to the I.R.S., either directly or through their elected representatives, expressing concerns about Judicial Watch; (4) a recommended list of issues to be pursued in the still-ongoing audit of Judicial Watch and a discussion of the I.R.S.'s ability to support its position on those issues on one page of a revenue agent's case history sheet; (5) internal e-mails among attorneys in the I.R.S. Office of Chief Counsel containing information provided to I.R.S. attorneys regarding the audit of Judicial Watch, the opinions of those I.R.S. attorneys, and drafts of those attorneys' advice; and (6) draft legal opinions and advice from the Assistant District Counsel for the Delaware-Maryland District to the Delaware-Maryland District Director of the I.R.S.

## II.

The parties filed cross motions for summary judgment. Judicial Watch argued that the I.R.S. had unlawfully withheld responsive documents and inappropriately redacted certain information from the partially released documents. Specifically, it contended that the I.R.S. had failed to perform an adequate search, had failed to submit an adequate index of withheld documents, and had improperly withheld documents under various FOIA exemptions, including FOIA Exemptions 5, 6, and 7(C). 5 U.S.C. § 552(b)(5), (6), 7(C) (2000).

The district court denied Judicial Watch's motion for summary judgment and granted the I.R.S. summary judgment. *Judicial Watch, Inc. v. Rossotti*, No. WMN-01-2672, 2002 WL 31962775 (D. Md. Dec. 16, 2002). Based on the affidavit of an I.R.S. disclosure employee, the court concluded that the I.R.S. had "met its burden of showing that it conducted an adequate search." The court further concluded that the declaration of an I.R.S. attorney constituted an index that "describes the withheld material in sufficient detail to enable the Court to determine whether the pages fall within the claimed exemption."

As for the I.R.S.'s invocation of the various FOIA exemptions, the court found that the I.R.S. properly redacted lower-level clerical employees' names from five pages of responsive documents pursuant to 5 U.S.C. § 552(b)(6). The court reasoned that "federal employees do have a privacy interest in the non-disclosure of their names" and Judicial Watch would "suffer[ ] no prejudice by the redaction of these names." The court explained that although Judicial Watch had "argue[d] that disclosure of the[se] employees' names is necessary to vindicate its rights," it had not explained "how knowledge of the names will help in that vindication."

Similarly, the court found that the I.R.S. properly invoked 5 U.S.C. § 552(b)(7)(C) to redact from eighty-eight pages the names and addresses of people who wrote to the I.R.S. expressing concerns about Judicial Watch because these individuals had a recognized privacy interest in their names and addresses and the disclosure of this information would contribute nothing to the public understanding of the operations or activities of the I.R.S. Finally, the court found that the I.R.S. had properly withheld two draft legal opinions and redacted information from another fifteen pages under 5 U.S.C. § 552(b)(5) because "[t]hese types of documents are the type traditionally protected by the government deliberative process privilege."

## III.

After carefully considering the record, the briefs, and the applicable law, and having the benefit of oral argument from the parties, we conclude that the district court properly granted the I.R.S. summary judgment. Accordingly, we affirm for the reasons stated in the district

court's opinion and engage in further discussion only to provide clarity on two issues.

## A.

Before the district court, Judicial Watch argued that the I.R.S. failed to perform an adequate search because it "failed to produce or even reference . . . numerous documents known to Judicial Watch, which are without question in the possession of Defendants," including documents relating to Judicial Watch's criminal conflict of interest complaints against the I.R.S. Commissioner, its written request to meet with the Commissioner, and the two meetings that Judicial Watch had with the I.R.S. in 1999. Judicial Watch argued that the fact that these documents were contained in the I.R.S.'s document submission to the United States District Court for the District of Columbia in the pending I.R.S. summons enforcement action against Judicial Watch evidenced the I.R.S.'s bad faith conduct in its search for responsive documents.

On appeal, however, Judicial Watch challenges the adequacy of the I.R.S.'s search on entirely different grounds. Namely, Judicial Watch argues that the I.R.S. did not search for documents relating to Judicial Watch founder and chairman, Larry Klayman, as Judicial Watch had requested; did not formally declare in its affidavit that "the search performed included all files that would likely contain responsive documents"; and improperly limited its search to the I.R.S.'s Baltimore District Office and Tax Exempt and Government Entities (TEGE) function.

Though Judicial Watch contends these new arguments are simply a "further articulation" of its district court arguments, in fact these arguments would require us to address issues of law and fact not considered in the court below. We will not address issues, unless raised in the district court, absent exceptional circumstances. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993); *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir. 1976). No such exceptional circumstances exist in the present case, and hence we affirm the district court's finding "that the I.R.S. has met its burden of showing that it conducted an adequate search" without addressing Judicial Watch's new arguments.

### B.

Our final point involves the district court's rejection of Judicial Watch's challenge to the IRS redaction of the names of "lower-level employees . . . contained in correspondence or a correspondence control log" under Exemption 6.

This exemption protects information contained in an agency's "personnel and medical files and *similar files* the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). The Supreme Court has directed that the phrase "similar files" has a "broad, rather than a narrow, meaning," and expressly rejected the contention that such files must contain "highly personal" or "intimate" information to fall within the exemption. *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598, 600 (1982). Rather, under Supreme Court precedent Exemption 6 extends to "[a]ll information which 'applies to a particular individual' . . . *regardless of the type of file in which it is contained*." *Washington Post Co. v. United States Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (emphasis added) (citing *Washington Post*, 456 U.S. at 602). Thus, this exemption clearly applies to the employee names in the correspondence at issue here if the disclosure of such names "would amount to a clearly unwarranted invasion of the privacy of *any* person." *Washington Post*, 456 U.S. at 602 n.3 (emphasis added) (internal quotations and citation omitted).

In *United States Dep't of Def. v. Fed. Labor Relations Auth. (FLRA)*, 510 U.S. 487, 489 (1994), the Supreme Court expressly held that the disclosure of employee *addresses* would constitute such a "clearly unwarranted" invasion of privacy. In doing so, the Court explained that whether an invasion of privacy was "clearly unwarranted" should be determined by balancing the asserted privacy interests against the "only relevant public interest . . . the extent to which disclosure of the information would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 497 (internal quotations and citation omitted). Applying this standard, the Court found that the privacy interests of federal employees in their home addresses was "nontrivial" and "not insubstantial," *id.* at 500, 501, that the public interest

in disclosure was "virtually non-existent," *id.* at 500, and therefore the disclosure of the addresses "would constitute a 'clearly unwarranted invasion' of the employees' personal privacy within the meaning" of Exemption 6. *Id.* at 489.

Accordingly, in conducting the Exemption 6 analysis here we must weigh the privacy interest of lower level federal employees in the nondisclosure of their names "against . . . the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 497 (internal quotations and citation omitted). Although the privacy interest of employees in the nondisclosure of their *names* was not at issue in *Dep't of Def.*, the Court's determination that the privacy interest protected by Exemption 6 encompasses the right of employees not to be "disturbed at home by work-related matters" and to "control . . . information concerning his or her person," and that these interests do "not dissolve simply because that information may be available to the public in some form," *id.* at 500-01, persuades us that the Court's rationale applies to names as well as addresses. *See also Sheet Metal Workers Int'l. Ass'n, Local No. 9 v. United States Air Force*, 63 F.3d 994 (10th Cir. 1995). This is so particularly given that, in ruling on the addresses, the *Dep't of Def.* Court resolved a conflict among the circuits, 510 U.S. at 492, siding with the majority of courts which had found that the privacy interest protected by Exemption 6 encompassed not only the addresses, but also the *names* of federal employees. *See, e.g., United States Dep't. of Navy v. FLRA*, 975 F.2d 348, 353 (7th Cir. 1992) (citing other cases for this proposition).

With respect to the public interest in disclosure, Judicial Watch has offered no explanation as to how the names of lower-level I.R.S. employees would reveal information about the government's operations. Moreover, we have previously recognized that the public interest in the names of government employees alone "would appear to be negligible" absent a "compelling allegation of agency corruption or illegality," *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000),* which,

---

*We reached this conclusion in the context of an Exemption 7(C) case. However, the Supreme Court, although recognizing that the *magnitude*

in an earlier chapter in this case, we determined did not exist. *See Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 406 (4th Cir. 2003) (noting that Judicial Watch's allegation regarding an illegal retaliatory audit "finds little support in the record"). Thus in this case, as in *Dept. of Def.*, there is a "virtually nonexistent FOIA-related public interest in disclosure," which would be outweighed by even a "very slight privacy interest," let alone the "not insubstantial" privacy interest at issue here. *Id.* at 500. Accordingly, the district court did not err in holding that the federal employees' privacy interest in their names outweighed the public interest in the disclosure.

*AFFIRMED*

LUTTIG, Circuit Judge, dissenting in part:

I concur in the majority's opinion except to the extent that it affirms the district court's judgment that the Internal Revenue Service lawfully withheld from production under 5 U.S.C. § 552(b)(6) the names of lower-level I.R.S. employees that appeared on documents that were responsive to Judicial Watch's Freedom of Information Act request.

Section 552(b)(6) exempts agencies from any obligation to produce under FOIA "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." While never specifying how the deleted I.R.S. employee names qualify as personnel files, medical files, or similar files, the district court upheld the I.R.S.' redactions, stating merely that "federal employees do have a privacy interest in the nondisclosure of their names and that Plaintiff suffers no prejudice by the redaction of these names." J.A. 50-51.

I would reverse the district court and require the I.R.S. to disclose the redacted names. The lone name of an I.R.S. employee appearing

---

of the public interest necessary to outweigh the privacy interest in an Exemption 6 case is less than that necessary in an Exemption 7(C) case, has found the relevant public interest to be weighed when determining whether disclosure is required is the same with respect to both Exemption 6 and Exemption 7(C). *See Dep't of Def.*, 510 U.S. at 496 n.6.

on a document related to a tax audit performed by the Service is not even arguably a "personnel . . . medical . . . [or] similar file[ ][,]" under even the most expansive definitions of those terms imaginable. As the Supreme Court held in *Department of the Air Force* v. *Rose*, 425 U.S. 352 (1976), a personnel file is a file containing "vast amounts of personal data" which constitute a "profile of an individual . . . showing, for example, where [a person] was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examination, evaluations of his work performance." *Id.* at 377. It is obvious that the redacted I.R.S. employee names are not "personnel files" as so defined in *Rose*, and, to its credit, the government does not even attempt to argue otherwise. *See* Appellee's Br. at 61-63.

But it is just as clear (with respect to the claim that the government does make) that these names are not "similar files" to personnel and medical files, within the meaning of the section 552(b)(6) exemption. The Supreme Court in *Department of State* v. *The Washington Post Co.*, 456 U.S. 595 (1982), held that files "similar" to personnel and medical files are files that contain, as do the type of personnel file described in *Rose*, "detailed Government records on an individual which can be identified as applying to that individual." *Id.* at 602. The lone name of an I.R.S. employee that appears in an agency document relating to a tax audit of a private citizen is simply not a detailed government record on that I.R.S. employee. *Compare*, *e.g.*, *Rose*, 425 U.S. at 355, 376-77 (holding that detailed case summaries of cadet disciplinary proceedings were files similar to personnel files); *Washington Post*, 456 U.S. at 600-01 (holding that files containing the details of a passport application were similar files); *Dept. of State* v. *Ray*, 502 U.S. 164, 173 (1991) (holding that detailed post-repatriation interviews with unsuccessful Haitian asylum seekers were similar files).

The majority never even addresses whether the I.R.S. employee names constitute personnel or similar files within the meaning of the (b)(6) exemption, that is, whether each employee name alone constitutes a detailed government record about that employee. It simply maintains that each I.R.S. employee name is "information which 'applies to a particular individual'," see *supra* at 6 (citing *Washington Post Co.* v. *United States Department of Health & Human Services*,

690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *Washington Post*, 456 U.S. at 598, 600), *and for this reason* is a "personnel or similar file" within the meaning of section 552(b)(6). Of course, that a name is information relevant to a particular individual (which undoubtedly it is) says nothing at all about whether that name constitutes a detailed government record about that individual (which most assuredly it is not).

Finally, although it is not even plausible to maintain that the names of the I.R.S. employees at issue are personnel or similar files of these employees, it would be open to argument, based upon existing Supreme Court precedent, that the audit-related documents from which these employee names were redacted do constitute detailed government records, and therefore "similar files" under (b)(6), of Judicial Watch. Under this argument, however, only Judicial Watch's privacy would be relevant to determining whether disclosure of the I.R.S. employee names "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And thus the I.R.S. employees' privacy interests in the nondisclosure of their names would be irrelevant and could not serve to justify the withholding at issue here.

Because I do not believe that the mere names of I.R.S. employees at issue in this litigation may be withheld as "personnel and medical files and similar files" under section 552(b)(6), I dissent from the court's affirmance of the district court's judgment that the exemption from disclosure in section 552(b)(6) is properly invoked to withhold these names.

The courts have long construed the Freedom of Information Act's exemptions so as to effectuate their own view of the proper balance between information that must be produced and information that may permissibly be withheld, typically reading the disclosure provisions of the Act narrowly and its exemptions from disclosure broadly. If the Freedom of Information Act's provisions governing production and exemption are to be contracted and expanded, those contractions and expansions should be effected not by the judiciary under the guise of interpretation, but by the Congress through legislative amendment.